UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-61055-BLOOM/Valle

JAMES W. SCOTT,

      Plaintiff,

v.

360 MORTGAGE GROUP, LLC,

      Defendant.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant 360 Mortgage Group, LLC's ("Defendant") Motion to Dismiss Case with Prejudice, ECF No. [14] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted in part and denied in part.

### I.    BACKGROUND

Plaintiff is a citizen of Florida who owns a home in Deerfield Beach, Florida. ECF No. [1] at ¶¶ 5, 8. Defendant is currently the loan servicer for Plaintiff's home mortgage loan. *Id.* at ¶ 8. The original lender on the mortgage was Sovereign Lending Group ("Sovereign"), with whom Plaintiff at some point completed a refinance. *See id.* at ¶ 16. In June of 2016, Plaintiff was confronted by one of his neighbors due to Sovereign's title company mistakenly placing Plaintiff's name on the neighbor's title and the neighbor's name on Plaintiff's title. *Id.* at ¶¶ 16-18. After that matter was resolved, Plaintiff "began questioning the original lender and title company for answers to make sure his title was not clouded." *Id.* at ¶ 19.

In August of 2016, Defendant sent Plaintiff a letter stating that it was the new servicer of his mortgage.  *Id.* at ¶ 20.  The letter did not indicate where the assignment of Plaintiff's mortgage to Defendant was recorded.  *Id.* at ¶ 23.  Plaintiff checked the public records but was unable to find any assignment of his mortgage to Defendant.  *Id.* at ¶¶ 21-22.

On April 7, 2017, in order to "check on the validity of the loan[,]" Plaintiff sent Defendant a "qualified written request," to which Defendant never responded.  *Id.* at ¶ 24.  On April 29, 2017, Plaintiff sent Defendant a second "qualified written request."  *Id.* at ¶ 25.  Also on April 29, 2017, after discovering that Mortgage Electronic Registration Systems, Inc. ("MERS") "was acting solely as nominee for Lender" with respect to his mortgage, Plaintiff sent MERS a "request for the 'milestones'" on the mortgage.  *Id.* at ¶ 26.  Plaintiff checked MERS' website, and on it found that Defendant "is listed as the current active servicer."  *Id.* at ¶ 27.

On May 10, 2017, Plaintiff received from Defendant a letter in response to his second qualified written request, which "contained information that [Plaintiff] already had from public records[,]" such as a copy of the mortgage and note from Sovereign.  *Id.* at ¶ 28.  Defendant stated in the letter that it was the "Holder" of the note and the "Owner" of the loan.  *Id.* at ¶ 29.

On May 15, 2017, Plaintiff received from Defendant a letter in response to the request for milestones that he sent to MERS, which MERS had forwarded to Defendant in order for Defendant to answer on its behalf.  *Id.* at ¶ 30.  The letter, according to the Complaint, indicated that MERS is the "recorded lienholder of [the] property on behalf of [Defendant]" and stated that Plaintiff's county would reflect MERS as the lienholder on behalf of Defendant.  *Id.* at ¶¶ 31-32.  Plaintiff was unable to find any assignment indicating such in the public records.  *Id.* at ¶ 31.  On that point, the letter advised Plaintiff as follows: "No assignment is required to be recorded with your county as long as . . . MERS is the recorded lienholder.  An assignment, which would be

from MERS to [Defendant], would only be recorded in the event legal proceedings are ever required." *Id.* at ¶ 33.

On May 26, 2017, Plaintiff, proceeding *pro se*, initiated the instant action against Defendant, asserting in his Complaint the following four claims for relief: a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA") (Count I); a violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") (Count II); violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count III); and a violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.* ("FCCPA") (Count IV).  Defendant moves to dismiss the Complaint in its entirety, advancing three supporting arguments: (1) Plaintiff lacks standing to bring this case because Plaintiff alleges damages based upon Defendant's and/or MERS' failure to record the assignment of his mortgage—which according to Defendant "underlies" each of Plaintiff's claims—to which there is no corresponding cause of action, as there is no duty in Florida to record the assignment of a mortgage; (2) relatedly, MERS is an indispensable party to this case (and its absence requires dismissal) because Plaintiff "seeks to attack the lack of an assignment from MERS to Defendant"; and (3) each of Plaintiff's claims otherwise fails to state a claim under which relief can be granted.  ECF No. [14] at 4, 7-9.  The Court will address each of Defendant's arguments in turn.

## II.   LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).  A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc.*

*v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the

four corners of the complaint may still be considered if it is central to the plaintiff's claims and is

undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir.

2002)).

The Court employs "less stringent standards" in assessing *pro se* pleadings, such as the

Complaint in this case.  *See Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 276-77

(11th Cir. 2008) (quoting *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976)).  However,

the Court may not act as counsel for a party or rewrite deficient pleadings, and *pro se* litigants

must still adhere to well-established pleading standards.  *See id.* (citing *McNeil v. United* States,

508 U.S. 106, 113 (1993) and *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369

(11th Cir. 1998)).

## III.   DISCUSSION

### A.  Standing

Defendant's argument that Plaintiff lacks standing is flawed in that it essentially relies

upon a distortion of, and disregard for, the specific claims asserted by Plaintiff.  Defendant's

standing argument goes as follows: "[T]here is *no* cause of action for failure to record an

assignment of a mortgage, which is just notice to third parties of the assignment. Therefore,

Plaintiff lacks standing to bring this case."  ECF No. [14] at 7 (emphasis in original) (internal

citation omitted).[1]  But despite Defendant's broad standing challenge to "this case" generally,

---

[1] Defendant points to a thorough examination conducted by the Middle District of Florida in *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257 (M.D. Fla. 2012) regarding the role of MERS in relation to the public recording practices of mortgage assignments in Florida.  *See* ECF No. [14] at 4-7. The *Fuller* court concluded, *inter alia*, that MERS (the defendant in the case) had no legal obligation to record assignments of mortgages and pay recording fees, explaining that "the recording of mortgage assignments, under Florida law, is at the complete discretion of the party wishing to record the document."  888 F. Supp. 2d at 1274-75 (observing that "there is no language in any Florida statute or judicial decision suggesting that the recording of a mortgage assignment is mandatory").

Defendant does not identify where in the Complaint Plaintiff actually asserts the above mentioned *cause of action*.

As to the specific claims that Plaintiff does assert, Count I asserts a RESPA violation premised on Defendant's alleged failure as a loan servicer to properly and timely respond to Plaintiff's purported qualified written requests.  Count II asserts a TILA violation based on Defendant's allegedly inadequate initial notification to Plaintiff upon being assigned Plaintiff's mortgage.  Notably, the potential success of these two claims does not depend in any way on a recording (or lack thereof) of the assignment of Plaintiff's mortgage.  As to the remaining two counts, Count III asserts three separate FDCPA violations and Count IV asserts one FCCPA violation, all of which are based on Defendant's alleged utilization of false or misleading representations and unfair or unconscionable means in collecting on Plaintiff's mortgage.  None of Plaintiff's four claims constitute a cause of action seeking to establish liability on Defendant (or MERS for that matter) specifically for a failure to record the assignment of the mortgage.  At most, in Counts III and IV, Plaintiff appears to challenge Defendant's claimed status with respect to his mortgage based on the lack of a public recording of the assignment.  *See, e.g.*, ECF No. [1] at ¶ 34 (alleging that "Defendant continues to collect and threatens to foreclose on [Plaintiff's] property without a valid recorded assignment in public records" ); *id.* at ¶ 49 (alleging a FDCPA violation based on Defendant's threat to take action that cannot be legally taken); *id.* at ¶ 54 (alleging a FCCPA violation based on Defendant's assertion of a legal right that it knows does not exist).  The essence of the statutory violations alleged in these Counts is that Defendant engaged in activities that it had no right to engage in—not that Defendant or anyone else failed to do something that the law required be done (e.g., ensuring the public recording of an

uncontested mortgage assignment).[2]  To the extent that Plaintiff alleges the lack of a publicly recorded assignment of his mortgage to Defendant, Plaintiff does not do so as a basis for liability in and of itself.  Defendant's attempt to construe Plaintiff's Complaint otherwise is of no avail.

Importantly, Defendant offers no argument that Plaintiff lacks standing to bring any of the specific claims he has asserted.  Nor could it, as it is Plaintiff's mortgage that serves as the underlying loan or purported debt for purposes of the respective statutes under which Plaintiff's claims are brought, and each of those statutes explicitly provide for a private cause of action. *See* 12 U.S.C. § 2605(f)(1) (RESPA); 15 U.S.C. § 1640(a) (TILA); 15 U.S.C. § 1692k (FDCPA); Fla. Stat. § 559.77 (FCCPA); *cf. Fuller*, 888 F. Supp. 2d at 1270-71 (finding that a county court clerk lacked standing to bring Florida common law claims against MERS where the state statute MERS allegedly violated did not explicitly create a right of action, and reasoning that "common law claims may not be premised on a violation of a statute where that statute is devoid of a private right of action").  Instead, Defendant simply relies on the *Fuller* case for the general proposition that Plaintiff lacks standing to bring this case.  *See* ECF No. [14] at 6-7.  But, as explained below, that reliance is woefully misplaced.

In *Fuller*, MERS sought to dismiss, based in part on standing grounds, a class action lawsuit brought against it and another defendant by a Florida circuit court clerk on behalf of himself and other circuit court clerks in Florida.  888 F. Supp. 2d at 1264.  The clerk alleged that MERS' system of electronically tracking the transfers of mortgages and mortgaging servicing

---

[2] It may be the case that the absence of a legal requirement that the assignment of Plaintiff's mortgage to Defendant be publicly recorded ultimately defeats, from a merits standpoint, Plaintiff's FDCPA and FCCPA claims in Counts III and IV (i.e., there being only ignorance or a misunderstanding on the part of Plaintiff rather than false and misleading representations or unfair and unconscionable collection efforts on the part of Defendant).  But Defendant has not made that argument here.  As far as standing is concerned—which Defendant does challenge in relation to the lack of a public recording of the assignment of Plaintiff's mortgage—that Plaintiff's FDCPA and FCCPA claims may ultimately fail on the merits does not strip Plaintiff of his obvious standing to bring those claims in the first place.

rights—which involves the designation of MERS as the mortgagee of record on the public records, but otherwise does not involve the public recording of transfers made between MERS members—contravened Florida law pertaining to the recording of mortgages. *Id.* at 1264-67. As relief, the clerk sought to recover through various Florida common law claims unpaid recording fees that would have otherwise been paid to the plaintiff clerks for physical recordings on the public records. *Id.* As the court explained, "[i]n essence, [the clerk sought] damages based upon a theory of a deprivation of recording fees for documents that were not recorded with him." *Id.* at 1269. According to MERS, however, the clerk lacked standing because the Florida statute he claimed MERS had violated, Fla. Stat. § 28.222, did not create a cause of action and merely outlined the clerk's duties and responsibilities for recording documents. *Id.* at 1268.

The court ultimately agreed with MERS that the clerk lacked standing, though notably not from an Article III standpoint. Specifically, with respect to Article III standing requirements, the court found that the clerk had sufficiently alleged an injury in fact by alleging that "the MERS recording system both usurps his lawful authority to maintain public land records and reduces the amount of revenue his office receives." *Id.* at 1269-70. The court explained further: "In addition, [the clerk] alleges that this 'non-public recording' interferes with the integrity of the public records by misstating that MERS is the true mortgage holder and rendering the public unable to identify who has the true mortgage interest in the property." *Id.* at 1270.

Rather, the court found dispositive that Fla. Stat. § 28.222 did not provide a right of action. *See id.* at 1270-71. On that point, the clerk argued that the absence of a cause of action in Fla. Stat. § 28.222 was irrelevant because his common law claims were "independent of a statutory violation" and the statute was "simply the 'statutory source'" of his authority over the county public records. *Id.* at 1270. The court rejected that argument, reasoning as follows:

8

> [The clerk's] view of the case . . . is problematic. Simple reliance on a statutory provision does not provide a cause of action as a basis for common law claims. In Florida, common law claims cannot be based on violations of a statute where that statute itself does not create a private right of action.

*Id.* (citing *Buell v. Direct Gen. Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008)); *see also Buell*, 267 F. App'x at 909 (noting that a statute which lacks a cause of action for its violation because it merely makes provision to secure the safety or welfare of the public as an entity, does not establish civil liability on common law claims).  Accordingly, the court held that because Fla. Stat. § 28.222 provided no private remedy for its violation, the clerk could not bring common law claims premised upon the statute, and further explained that the clerk "may not use § 28.222, Florida Statutes, to provide a framework for the common law claims set forth in the Complaint."  *Fuller*, 888 F. Supp. 2d at 1271.

Here, by contrast, Plaintiff does not bring common law claims premised upon a state statute that does not provide a remedy for its violation.  The opposite is the case.  Plaintiff's claims are statutory, and the respective statutes they are brought under create private rights of action that contemplate the specific relief sought.  That this case involves MERS and an allegation that the assignment of Plaintiff's mortgage was not recorded in the public records does not somehow convert Plaintiff's claims into something they are not.  As such, the clerk's lack of standing in *Fuller* is inapposite here, and the Court is otherwise satisfied that Plaintiff has standing to pursue the statutory claims asserted in his Complaint.

## B.  MERS is not an Indispensable Party

In similar fashion to its standing argument, Defendant's argument that MERS is an indispensable party to this case ignores the specific claims asserted by Plaintiff by focusing exclusively on the purported "attack" by Plaintiff on "the lack of an assignment from MERS to Defendant[.]"  ECF No. [14] at 9.  According to Defendant, "[t]he absence of MERS prevents

the Court from making any determination of the validity and/or need for an assignment the [sic] Mortgage, requiring dismissal of this case." *Id.*

Under Fed. R. Civ. P. 19(a)(1), a person must be joined as a party if, (1) "in that person's absence, the court cannot accord complete relief among existing parties[,]" or (2) "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A), (B).  "The burden is on the movant to show that an absent part is necessary and indispensable such that the suit should be dismissed under Rule 19." *Selective Ins. Co. of the Se. v. William P. White Racing Stable, Inc.*, 2015 WL 11237014, at *2 (S.D. Fla. Dec. 22, 2015) (citing *Nottingham v. General American Communications Corp.*, 811 F.2d 873, 880 (5th Cir. 1987)).  Defendant has failed to meet that burden here.

To begin with, as discussed, Plaintiff does not allege the lack of a publicly recorded assignment of his mortgage to Defendant as a basis for liability in and of itself.  Having only made a general assertion to the contrary, Defendant fails to offer any arguments as to either prong of Rule 19.[3]  In any event, the Court sees no basis for such arguments.  With respect to the first prong, the Court can afford complete relief to Plaintiff against Defendant in the absence of MERS because Plaintiff's claims allege violations of *Defendant's* responsibilities and duties as Plaintiff's mortgage servicer under RESPA, TILA, the FDCPA, and the FCCPA.  If those violations occurred, then Defendant and only Defendant will be liable for them.  As to the second prong,  looking only at the specific claims asserted by Plaintiff, any potential liability Defendant

---

[3] In fact, in arguing for dismissal based on the absence of MERS, Defendant does not cite to Rule 19 or any other rule for that matter.  *See* ECF No. [14] at 9.

Case No.  17-cv-61055-BLOOM/Valle

faces for failing to meet its loan servicer responsibilities and duties under RESPA, TILA, FDCPA, and FCCPA in no way implicates any interest held by MERS.  *See, e.g.*, *Jones v. Bank of New York*, 2013 WL 3728382, at \*4-5 (D. Mass. July 12, 2013) (explaining that because MERS is not a loan servicer it fell outside the reach of the same RESPA provision serving as the basis for Plaintiff's RESPA claim in this case); *McDonald v. OneWest Bank, FSB*, 2012 WL 555147, at \*3 (W.D. Wash. Feb. 21, 2012) (explaining that the notification obligation imposed by 15 U.S.C. § 1641(g)(1)—which Plaintiff's TILA claim alleges that Defendant violated in this case—"falls on the new owner or assignee of the debt, not on the transferor. Thus, to the extent a violation occurred in relation to the January 27, 2010, transfer, only OneWest could be responsible for the lack of notification.") (internal quotation marks omitted); *Golliday v. Chase Home Fin., LLC*, 761 F. Supp. 2d 629, 632 (W.D. Mich. 2011) ("Plaintiffs' allegations against MERS do not impact their FDCPA claim against Trott & Trott.").

Based on the specific claims asserted by Plaintiff in this case, MERS is not a necessary party within the meaning of Rule 19(a)(1)(A) or (B).  As such, the Court rejects Defendant's argument that this case must be dismissed given the absence of MERS.

Having found that Plaintiff has standing and that MERS is not a necessary party to this case, the Court now turns to whether Counts I-IV of the Complaint state a claim.

### C.  RESPA Claim (Count I)

The Real Estate Settlement Procedures Act "is a consumer protection statute that regulates the real estate settlement process."  *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C. § 2601(a)).  "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires."  *McLean v. GMAC Mortg. Corp.*, 398 F. App'x.

467, 471 (11th Cir. 2010) (internal citation omitted).  Relevant here, RESPA requires a loan servicer to provide a written response acknowledging receipt of a "qualified written request" from a borrower within five days of receipt.  12 U.S.C. § 2605(e)(1)(A).  RESPA imposes liability for failure to comply with its provisions in an amount equal to the sum of "any actual damages to the borrower as a result of the failure[.]"  12 U.S.C. § 2605(f)(1)(A).  A borrower may also recover statutory damages in the amount of $2,000 if there is a pattern or practice of noncompliance with RESPA.  12 U.S.C. § 2605(f)(1)(B).  Thus, to state a claim under RESPA for failure to respond properly to a request for information, "a plaintiff must allege: (1) the defendant is a loan servicer under the statute; (2) the plaintiff sent [the request] consistent with the requirements of the statute; (3) the defendant failed to respond adequately within the statutorily required days; and (4) the plaintiff has suffered actual or statutory damages." *Baez v. Specialized Loan Servicing, LLC*, 219 F. Supp. 3d 1221, 1224 (S.D. Fla. 2016) (quoting *Correa v. BAC Home Loans Servicing, LP*, 2012 WL 1176701, at *6 (M.D. Fla. Apr. 9, 2012)) (alteration in original) (internal quotation marks omitted)

In Count I of the Complaint, Plaintiff alleges that Defendant failed to respond to his qualified written requests in a proper and timely manner in violation of 12 U.S.C. § 2605(e).  ECF No. [1] at ¶ 39.  Seeking dismissal of Count I, Defendant makes two arguments as to why Plaintiff's RESPA claim is deficient: (1) the two letters Plaintiff sent Defendant—on April 7, 2017 and April 29, 2017, respectively—are not actually qualified written requests under RESPA because they merely requested copies of the assignment of Plaintiff's mortgage to Defendant; and (2) Plaintiff has failed to plead any damages in relation to his RESPA claim.  *See* ECF No. [14] at 8.

With respect to Defendant's first argument, "[f]or a document to fall within the definition of a qualified written request under RESPA, the document must contain information that (i) shows why a plaintiff believes his or her loan account servicing was in error or (ii) seeks information pertaining to the servicing of the loan." *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1331 (S.D. Fla. 2014) (citing 12 U.S.C. § 2605(e)(1)(B)(ii)).  And as Defendant alludes to, letters that merely seek copies of loan documents and assignments of deeds do not qualify as qualified written requests under RESPA.  *See id.* (finding that letters which "merely requested copies of legal documents and proof of transfer" did not qualify as qualified written requests); *Echeverria v. BAC Home Loans Servicing, LP*, 900 F. Supp. 2d 1299, 1306-07 (M.D. Fla. 2012) (finding that a request for a copy of a promissory note was not a qualified written request); *Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574-75 (E.D.N.C. 2012) (finding that a letter seeking copies of loan documents and assignments of deeds was not a qualified written request under RESPA).  For that reason, the first letter Plaintiff sent Defendant is not a qualified written request under RESPA, as it merely requests "copies of all pertinent information regarding [Plaintiff's] loan. . . . including original promissory note and mortgage deed."  ECF No. [1] at Exh. B.  However, the same cannot be said for the second letter Plaintiff sent Defendant.  Although the second letter does request copies of "all assignments, proof of sale, [and] proof transfer[,]" it also indicates that Plaintiff "disputes the amount that is owed according to the Monthly Billing Statement" and requests "information about the fees, costs, and escrow accounting on [Plaintiff's] loan."  *Id.* at Exh. C.  In the Court's view, this additional information certainly pertains to the servicing of Plaintiff's mortgage.  *See* 12 U.S.C. § 2605(e)(1)(B)(ii).  Accordingly, the Court finds that Plaintiff's second letter, sent to Defendant on April 29, 2017, constitutes a qualified written request under RESPA.

Addressing Defendant's second argument, Plaintiff has failed to plead actual or statutory damages under RESPA.  *See* ECF No. [1] at 5-6.  At most, Plaintiff "demands judgment against 360 Mortgage for a proper accounting and application of his mortgage payments and for actual, statutory, treble and/or punitive damages . . . ."  *Id.* at 6.  But this is not enough to state a plausible claim for damages under RESPA.  *See Correa*, 2012 WL 1176701, at *8 (finding insufficient the *pro se* plaintiff's statement that she "demands judgment . . . for a proper accounting and application of [the] mortgage payments for actual, statutory, treble, and/or punitive damages" and further noting that the plaintiff could not seek punitive damages because RESPA does not provide for punitive damages); *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D. Fla. May 6, 2013) (finding that the plaintiffs failed to plead actual or statutory damages under RESPA where they merely alleged "actual and intangible damages, which are a 'direct and proximate result' of 'the Loan Servicer's violation'").  Accordingly, because Plaintiff has failed to adequately allege damages based on Defendant's alleged RESPA violation, Count I is dismissed without prejudice, and with leave to amend.

### D.  TILA Claim (Count II)

"The Truth in Lending Act is a consumer protection statute that seeks to 'avoid the uninformed use of credit' through the 'meaningful disclosure of credit terms,' thereby enabling consumers to become informed about the cost of credit."  *Benjamin*, 2013 WL 1891284, at *2 (citing 15 U.S.C. § 1601(a)).  "TILA creates a private cause of action for actual and statutory damages for certain disclosure violations, 15 U .S.C. § 1640(a)."  *Id.* (citing *Kissinger v. Wells Fargo Bank, N.A.*, 888 F. Supp. 2d 1309, 1311 (S.D. Fla. 2012)).  Relevant here, 15 U.S.C. § 1641(g) provides:

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or

assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--

> (A) the identity, address, telephone number of the new creditor;

> (B) the date of transfer;

> (C) how to reach an agent or party having authority to act on behalf of the new creditor;

> (D) the location of the place where transfer of ownership of the debt is recorded; and

> (E) any other relevant information regarding the new creditor.

15 U.S.C. § 1641(g)(1).

In Count II of the Complaint, Plaintiff alleges that Defendant failed to comply with 15 U.S.C. § 1641(g) "by not indicating the location of the place where transfer of ownership of the debt is recorded."  ECF No. [1] at ¶ 44.  The Court notes that Count II, which clearly alleges a violation of subsection (1)(D) of section 1641(g), appears to refer to the letter Defendant sent Plaintiff in August of 2016 informing him that it was the new servicer of his mortgage.  *See* ECF No. [1] at ¶ 20.  Defendant argues that Count II is deficient because the Complaint "fails . . . to consistently allege Defendant holds the Note/ Mortgage . . . ."  ECF No. [14] at 8.  Defendant is correct.

As Defendant correctly points out, "TILA does not impose liability on servicers, but on 'creditor[s] who fail[ ] to comply with any requirement imposed under … section 1635 of this title [and] subsection (f) or (g) of section 1641.'"  *Benjamin*, 2013 WL 1891284, at *2 (quoting 15 U.S.C. § 1640(a)) (alterations in original); *see also Khan v. The Bank of New York Mellon*, 2012 WL 1003509 at *3 ("Servicers have no liability for violations of TILA *unless* they are the current or former owners of the loan.") (emphasis added); *Correa*, 2012 WL 1176701, at *9 ("Defendant BAC, as a servicer of the note, cannot be an assignee under TILA unless Plaintiff

alleges facts sufficient to show that Defendant BAC must be or must have been the owner of the note. . . . Therefore, Plaintiff needs to allege facts plausibly showing that Defendant BAC is or was the owner of the obligation.") (internal citations omitted).  Here, the only allegation in the Complaint relating to whether Defendant is the actual owner of Plaintiff's mortgage is that Defendant, in its response to Plaintiff's April 29, 2017 letter, indicated that it was "the 'Holder' of the note and the 'Owner' of the loan."  ECF No. [1] at ¶ 29.  But even under the liberal pleading standards afforded to *pro se* pleadings, the Court does not equate this allegation by itself as an allegation by Plaintiff that Defendant is in fact the owner of his mortgage.  Indeed, it is the contrary that Plaintiff appears to allege, as the gravamen of the Complaint is that there is no public record to confirm the assignment of Plaintiff's mortgage to Defendant.  *See id.* at ¶¶ 21-22, 27, 29.  As a prime example, Plaintiff alleges that "Defendant continues to collect and threatens to foreclose on [his] property without a *valid* recorded assignment in public records." *Id.* at ¶ 34 (emphasis added).  And, in his FDCPA and FCCPA claims, Plaintiff essentially asserts that Defendant's actions in attempting to collect on his mortgage have been unlawful— i.e., without legal right to do those actions.  *See id.* at ¶¶ 49, 54.

Thus, the Court finds that Plaintiff "[has] failed to clearly allege that [Defendant] is the owner of the [mortgage] itself.  Accordingly, TILA does not provide a cause of action against [Defendant] for the conduct alleged." *Benjamin*, 2013 WL 1891284, at *3.  Accordingly, Count II is dismissed without prejudice, and with leave to amend.

### E.  FDCPA Claim (Count III)

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  In order to state a claim under the FDCPA, a plaintiff must allege that: "(1) the plaintiff has been

Case No.  17-cv-61055-BLOOM/Valle

the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant is engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000). Particularly relevant here are the first and second prongs.  With respect to the first prong, correspondence that merely seeks to communicate information or relates to the enforcement of a security interest—such as a notice of foreclosure—does not fall within the ambit of the FDCPA. *Helman*, 85 F. Supp. 3d at 1325-28.  With respect to the second prong, "[t]he FDCPA removes from the definition of 'debt collector' any person whose activity concerns a debt which was not in default at the time it was obtained by such person." *Benjamin*, 2013 WL 1891284, at *3 (citing 15 U.S.C. § 1692a(6)); *see also Fenello v. Bank of America, NA*, 577 F. App'x 899, 902 (11th Cir. 2014) ("In this case, the district court correctly concluded that Bank of America was not a 'debt collector' for purposes of [the FDCPA] because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer."); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009) ("Under the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered 'debt collectors,' as long as the debt was not in default at the time it was assigned."); *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) (same).

In Count III of the Complaint, Plaintiff alleges that Defendant has violated certain provisions of the FDCPA that prohibit false representations regarding the character, amount, or legal status of any debt; threats to take actions that cannot legally be taken or that is not intended to be taken; and the use of unfair or unconscionable means to collect or attempt to collect any debt.  ECF No. [1] at ¶¶ 48-50 (referencing 15 U.S.C. §§ 1692e(2), (5) and 15 U.S.C. § 1692f). Defendant argues that Count III fails to state a claim for two reasons: (1) the Complaint fails to

17

establish that Defendant is a debt collector because it fails to allege that Plaintiff's mortgage was in default when it was assigned to Defendant; and (2) Defendant's correspondence with Plaintiff constituted, at best, "attempt[s] to communicate on and/or enforce the Mortgage," and therefore cannot be considered debt collection activity for purposes of the FDCPA.  ECF No. [14] at 8. Both arguments are well taken.

With respect to Defendant's first argument, the Complaint offers no details whatsoever as to the status of Plaintiff's mortgage at the time it was purportedly assigned to Defendant.  The Court notes that the Complaint does allege that Defendant currently "threatens to foreclose on [Plaintiff's] property . . . ."  ECF No. [1] at ¶ 34.  However, even if the Court were to infer from that allegation that Plaintiff's mortgage is currently in default, the allegation simply does not speak to whether Plaintiff's mortgage was in default at the time of the assignment to Defendant—the dispositive inquiry here.  Thus, because Plaintiff has failed to allege that his mortgage was in default at the time it was assigned to Defendant, Defendant does not qualify as a debt collector under the FDCPA.

Further, as to Defendant's second argument regarding debt collection activity, in determining whether a communication is "'in connection with the collection of any debt,' courts should look to the language of the letters in question, specifically to statements that demand payment, discuss additional fees if payment is not tendered, and disclose that the [sender] was attempting to collect a debt and was acting as a debt collector."  *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012).  Further, a "communication can have more than one purpose, for example, providing information to a debtor as well collecting a debt."  *Pinson v. Albertelli Law Partners LLC*, 618 F. App'x 551, 553 (11th Cir. 2015).

Case No.  17-cv-61055-BLOOM/Valle

Here, the Complaint reflects that Plaintiff received from Defendant three different communications: the letter in August of 2016 indicating that Defendant was the new servicer of Plaintiff's mortgage; the letter on May 10, 2017 in response to Plaintiff's purported second qualified written request; and the letter on May 15, 2017 on behalf of MERS in response to Plaintiff's request for the milestones on his mortgage.  *See* ECF No. [1] at ¶¶ 20, 28, 30.  None of these communications amount to debt collection activity.  The August 2016 letter, according to the Complaint, did nothing more than notify Plaintiff that Defendant was the new servicer of his mortgage, and the May 10, 2017 letter and the May 15, 2017 letter—both responsive in nature— simply sought to provide Plaintiff with the information he requested and to explain to him the reason why the assignment of his mortgage to Defendant would not be recorded in the public records.  *See id.* at ¶¶ 20, 29, 31-33; *id.* at Exh. F.  Even in a light most favorable to Plaintiff, these communications "merely sought to communicate information" rather than to collect on a debt.  *Helman*, 85 F. Supp. 3d at 1328 (finding that four separate letters sent by defendant loan servicers did not constitute debt collection activity in part because they did not demand payment or delver an ultimatum or establish a deadline); *see also Gillespie v. Chase Home Finance, LLC*, 2009 WL 4061428 (N.D. Ind. Nov. 20, 2009) (concluding that two letters were not debt collection activity because they "were in the nature of providing information as opposed to being in the nature of a debt collection demand" and further noting that although the ultimate goal of the letters was ensuring payment of the underlying debts, the letters themselves did not provide terms of payment, establish deadlines, or threaten collection proceedings); *cf. Reese*, 678 F.3d at 1214-17 (finding that a letter which explicitly "demand[ed] full and immediate payment of all amounts due and owing thereunder" constituted debt collection activity).  Thus, Plaintiff has failed to allege that Defendant actually engaged in debt collection activity under the FDCPA.

Case No.  17-cv-61055-BLOOM/Valle

Because Plaintiff has not sufficiently alleged that Defendant is a debt collector or that Defendant's actions constituted debt collection activity, Plaintiff fails to state a claim under the FDCPA.  Accordingly, Count III is dismissed.  Because the Court finds that amendment would be futile, the dismissal is with prejudice.

### F.  FCCPA Claim (Count IV)

The FCCPA is "a Florida state analogue to the federal FDCPA . . . ."  *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836-37 (11th Cir. 2010).  That said, "[t]he elements necessary to plead a claim under the FCCPA are similar but distinguishable from the elements of establishing a claim under the FDCPA. The first prong is substantially identical to the FDCPA, as the FCCPA only applies to consumer debt."  *Deutsche Bank Nat. Tr. Co. v. Foxx*, 971 F. Supp. 2d 1106, 1114 (M.D. Fla. 2013) (citing Fla. Stat. § 559.55(1)).  "The second prong differs from the FDCPA in that the FCCPA prohibits acts of 'persons' and, accordingly, is not limited to 'debt collectors.'"  *Id.* (citing *Bacelli v. MFP, Inc., et al.*, 729 F.Supp.2d 1328 (M.D. Fla. 2010)).  "The third prong requires an act or omission prohibited by the FCCPA."  *Id.*  Under Fla. Stat. § 559.72(9)—the provision under which Plaintiff brings his FCCPA claim—no person collecting consumer debts shall "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some legal right when such person knows that the right does not exist."

Ultimately, Plaintiff's failure to state a claim under the FDCPA amounts to a failure to state a claim under the FCCPA as well.  More specifically, for the same reasons Defendant's communications with Plaintiff do not constitute debt collection activity for purposes of the FDCPA, those communications do not constitute debt collection activity for purposes of the

FCCPA.[4]  *See generally Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007) (finding that a mortgage foreclosure action does not qualify as debt collection activity under the FCCPA and reasoning as follows: "While the FCCPA does not squarely address this issue and there is no Florida case directly on point, the undersigned finds no reason why the rationale espoused under FDCPA precedent should not apply with equal force to FCCPA cases. In fact, § 559.77(5) of the FCCPA provides that, when applying the provisions of the FCCPA, 'great weight shall be given to the interpretations of ... the federal courts relating to the federal Fair Debt Collection Practices Act.'"), *aff'd*, 288 F. App'x 571 (11th Cir. 2008); *see also Crespo v. Butler & Hosch, P.A.*, 2014 WL 11531360, at *2 n.2, *2-*4 (S.D. Fla. Mar. 21, 2014) (relying on federal FDCPA precedent as applicable "with equal force to the [plaintiff's] state FCCPA claim" in addressing whether the defendant's mailing of a letter constituted debt collection activity for purposes of the FDCPA and the FCCPA).   Accordingly, Count IV is dismissed with prejudice.

## IV.    CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Case with Prejudice, **ECF No. [14]**, is **GRANTED in part and DENIED in part**.

2. Counts I and II are **DISMISSED without prejudice**.

3. Counts III and IV are **DISMISSED with prejudice**.

---

[4] The same cannot be said in this context with respect to the analysis that Defendant does not qualify as a debt collector under the FDCPA.  *See generally Williams v. Educ. Credit Mgmt. Corp.*, 88 F. Supp. 3d 1338, 1343 (M.D. Fla. 2015) (collecting cases and discussing the FCCPA's broader reach over "persons" compared to the FDCPA's applicability only to "debt collectors"); *see also Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324, 1327 (M.D. Fla. 2011) ("Although the federal FDCPA does not apply to original creditors, the FCCPA has been interpreted to apply to original creditors as well as debt collection agencies.")

Case No.  17-cv-61055-BLOOM/Valle

4. Plaintiff is granted leave to amend and is directed to file an Amended Complaint on or before **September 11, 2017**.

**DONE AND ORDERED** in Miami, Florida, this 30th day of August, 2017.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record