UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-61055-BLOOM/Valle

JAMES W. SCOTT,

    Plaintiff,
v.

360 MORTGAGE GROUP, LLC,

    Defendant.
_____/

### ORDER ON MOTION TO DISMISS AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendant 360 Mortgage Group, LLC's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice, ECF No. [35] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiff is a citizen of Florida who owns a home in Deerfield Beach, Florida. *See* ECF No. [32], at ¶¶ 4, 7. Defendant is currently the loan servicer for Plaintiff's home mortgage loan. *See Id.* at ¶ 7. The original lender on the mortgage was Sovereign Lending Group ("Sovereign"), with whom Plaintiff at some point completed a refinance. *See Id.* at ¶ 13. In June of 2016, Plaintiff was confronted by one of his neighbors due to Sovereign's title company mistakenly placing Plaintiff's name on the neighbor's title and the neighbor's name on Plaintiff's title. *See Id.* at ¶¶ 13–15. After that matter was resolved, Plaintiff "began questioning the original lender and title company for answers to make sure his title was not clouded." *Id.* at ¶ 16.

In August of 2016, Defendant sent Plaintiff a letter stating that it was the new servicer of his mortgage. *See Id.* at ¶ 17. The letter did not indicate where the assignment of Plaintiff's mortgage to Defendant was recorded. *See Id.* at ¶ 20. Plaintiff checked the public records but was unable to find any assignment of his mortgage to Defendant. *See Id.* at ¶¶ 18–19.

On April 7, 2017, in order to "check on the validity of the loan[,]" Plaintiff sent Defendant a "qualified written request" ("QWR"), to which Defendant never responded. *Id.* at ¶ 21. On April 29, 2017, Plaintiff sent Defendant a second QWR. *See Id.* at ¶ 22. Also on April 29, 2017, after discovering that Mortgage Electronic Registration Systems, Inc. ("MERS") "was acting solely as nominee for Lender" with respect to his mortgage, Plaintiff sent MERS a "request for the 'milestones'" on the mortgage. *Id.* at ¶ 23. Plaintiff checked MERS' website, and on it found that Defendant "is listed as the current active servicer." *Id.* at ¶ 24.

On or around May 7, 2017, Plaintiff sent dispute letters to Trans Union, Equifax, and Experian in regard to Defendant "reporting and furnishing information without a valid assignment in public records." *Id*. at ¶ 25.

On May 10, 2017, Plaintiff received from Defendant a letter in response to his second QWR, which "contained information that [Plaintiff] already had from public records[,]" such as a copy of the mortgage and note from Sovereign. *Id.* at ¶ 26. Defendant stated in the letter that it was the "Holder" of the note and the "Owner" of the loan. *Id.* at ¶ 27.

On May 12, 2017, Defendant made the first of 23 calls to Plaintiff's cell phone, even though Plaintiff had "revoked consent to be called in reference to the alleged debt" in the April 29, 2017 QWR. *Id*. at ¶¶ 28, 30. At or near the time of each call, Plaintiff noted certain details pertaining to the calls, such as the date, time, and whether Plaintiff answered the call. *See Id*. at ¶ 33. Defendant's agents stated on more than one occasion that the purpose of the calls was to

collect on Plaintiff's debt.  *See Id*. at ¶ 29.  For instance, on July 28, 2017, Plaintiff spoke with one of Defendant's agents, who informed Plaintiff that the call was an attempt to collect on a debt and that the agent was unaware of any current lawsuit or revoked consent on behalf of Plaintiff.  *See Id*. at ¶ 41.  Plaintiff again revoked his consent to being called: nevertheless, the agent told Plaintiff that he would continue to call him.  *See Id*.  On several other occasions, Plaintiff answered the call but "no one would say anything and there would be only dead air[,]" leading Plaintiff to believe that the calls were placed using an automatic telephone dialing system.  *Id*. at ¶¶ 36–37.

On May 15, 2017, Plaintiff received from Defendant a letter in response to the request for milestones that he sent to MERS, which MERS had forwarded to Defendant in order for Defendant to answer on its behalf.  *See Id.* at ¶ 43.  The letter, according to the Amended Complaint, indicated that MERS is the "recorded lienholder of [the] property on behalf of [Defendant]" and stated that Plaintiff's county would reflect MERS as the lienholder on behalf of Defendant.  *Id.* at ¶¶ 44–45.  Plaintiff was unable to find any assignment indicating such in the public records.  *See Id.* at ¶ 45.  On that point, the letter advised Plaintiff as follows: "No assignment is required to be recorded with your county as long as . . . MERS is the recorded lienholder.  An assignment, which would be from MERS to [Defendant], would only be recorded in the event legal proceedings are ever required." *Id.* at ¶ 46.

From June 5, 2017 to June 15, 2017, Plaintiff received updated credit reports from Trans Union, Equifax, and Experian.  *See Id*. at ¶¶ 47–49.  According to Plaintiff, none of the reports indicated that his account was in dispute.  *See Id*. at ¶ 50.  Plaintiff believes that Defendant failed to conduct a proper investigation and simply informed the credit reporting agencies ("CRA") that it had verified that the account in dispute belonged to Defendant and was owed by Plaintiff.  *See*

*Id*. at ¶ 51.  On July 30, 2017, Plaintiff again disputed his account with Defendant to the CRAs regarding Defendant's "reporting without a valid assignment in public records."  *Id*. at ¶ 52.  None of the reports he received from Experian and Trans Union on August 17, 2017, or September 19, 2017, respectively, indicated that the account is in dispute.  *See Id*. ¶¶ 53–55.  According to Plaintiff, Defendant continues to allege that they are the "Holder" and "Owner" of the note and mortgage loan for the property.  *Id*. at ¶ 56.

On May 26, 2017, Plaintiff, proceeding *pro se*, filed his Complaint against Defendant, asserting the following four claims for relief: a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA") (Count I); a violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") (Count II); violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count III); and a violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq.* ("FCCPA") (Count IV).  *See* ECF No. [1].  Defendant moved to dismiss the Complaint in its entirety with prejudice.  *See* ECF No. [14].  On August 30, 2017, the Court granted the motion in part, dismissing the RESPA and TILA claims without prejudice, but dismissing the FDCPA and FCCPA claims with prejudice.  *See* ECF No. [28].

On September 25, 2017, Plaintiff filed an Amended Complaint, bringing forth claims for Defendant's violations of RESPA, TILA, the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), and the Fair Credit Reporting Act, 15 U.S.C. § 1681s–2(b), *et seq*. ("FCRA").  On October 19, 2017, Defendant again moved to dismiss the Amended Complaint with prejudice.  *See* ECF No. [35].  Plaintiff filed his response on October 30, 2017.  *See* ECF No. [36].  Defendant did not submit a reply.  The Motion is ripe for adjudication.

## II.   LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*

*Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

The Court employs "less stringent standards" in assessing *pro se* pleadings, such as the Amended Complaint in this case. *See Lampkin-Asam v. Volusia Cty. Sch. Bd.*, 261 F. App'x 274, 276-77 (11th Cir. 2008) (quoting *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976)). However, the Court may not act as counsel for a party or rewrite deficient pleadings, and *pro se* litigants must still adhere to well-established pleading standards. *See Id.* (citing *McNeil v. United* States, 508 U.S. 106, 113 (1993) and *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

**III.   DISCUSSION**

    **A.   RESPA Claim (Count I).**

Plaintiff first brings a claim against Defendant for violations of RESPA, alleging that Defendant "deliberately failed to respond in a proper and timely way to [Plaintiff's] 'qualified written requests' for information about, and corrections to, his mortgage account." *See* ECF No. [32], at ¶ 61. Defendant argues in the Motion that the RESPA claim should be dismissed because Plaintiff has failed to adequately plead any damages. *See* ECF No. [35], at 3. The Court agrees with Defendant.

The Real Estate Settlement Procedures Act "is a consumer protection statute that regulates the real estate settlement process." *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C. § 2601(a)). "RESPA prescribes certain actions to be followed by entities or persons responsible for servicing federally related mortgage loans, including responding to borrower inquires." *McLean v. GMAC Mortg. Corp.*, 398 F. App'x. 467, 471 (11th Cir. 2010) (internal citation omitted). Relevant here, RESPA requires a loan servicer to provide a written response acknowledging receipt of a "qualified written request" from a borrower within five days of receipt. *See* 12 U.S.C. § 2605(e)(1)(A). RESPA imposes liability for failure to comply with its provisions in an amount equal to the sum of "any actual damages to the borrower as a result of the failure[.]" 12 U.S.C. § 2605(f)(1)(A). A borrower may also recover statutory damages in the amount of $2,000 if there is a pattern or practice of noncompliance with RESPA. *See* 12 U.S.C. § 2605(f)(1)(B). Thus, to state a claim under RESPA for failure to respond properly to a request for information, "a plaintiff must allege: (1) the defendant is a loan servicer under the statute; (2) the plaintiff sent [the request] consistent with the requirements of the statute; (3) the defendant failed to respond adequately within the statutorily required days; and (4) the plaintiff has suffered actual or statutory damages." *Baez v. Specialized Loan Servicing, LLC*, 219 F. Supp. 3d 1221, 1224 (S.D. Fla. 2016) (quoting *Correa v. BAC Home Loans Servicing, LP*, 2012 WL 1176701, at *6 (M.D. Fla. Apr. 9, 2012)) (alteration in original) (internal quotation marks omitted).

In the Court's order dismissing in part Plaintiff's first Complaint, the Court found that only Plaintiff's April 29, 2017 letter to Defendant constituted a QWR under RESPA. *See* ECF No. [28], at 13. Defendant has not contested this point. Thus, only the fourth element, whether Plaintiff has suffered actual or statutory damages, is at issue before the Court.

In the Amended Complaint, Plaintiff "demands judgment against [Defendant] for a proper accounting and application of his mortgage payments and for actual or statutory damages and fees and costs of $136.78 for office supplies and mailing . . . ." *See* ECF No. [32], at ¶ 61.

The Court finds that the actual damages alleged are insufficient to support a claim for relief under RESPA.[1]  "[C]osts incurred while preparing a qualified written request for information from a servicer cannot serve as a basis for damages because, at the time those expenses are incurred, there has been no RESPA violation." *Long v. Residential Credit Sols., Inc.*, No. 9:15–CV–80590, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015) (citing *Steele v. Quantum Serv. Corp.*, 12–CV–2897, 2013 WL 3196544 (N.D. Tex. June 25, 2013)).  However, alleged photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a QWR are actionable under RESPA. *See Rodriguez v. Seterus, Inc.*, No. 15–61253–CIV, 2015 WL 5677182, at *2–3 (S.D. Fla. Sept. 28, 2015); *see also Russell v. Nationstar Mortg., LLC*, No. 4–61977–CIV, 2015 WL 541893, at *2 (S.D. Fla. Feb. 10, 2015).

In his Amended Complaint, however, Plaintiff fails to specify whether the "$136.78 for office supplies and mailing" were incurred *after* Defendant's allegedly inadequate response to his April 29, 2017 QWR.  The Amended Complaint, moreover, does not provide sufficient facts to support such a claim as the Plaintiff has failed to allege that he sent any further

---

[1] The Amended Complaint also does not adequately plead statutory damages.  In order to recover statutory damages, the plaintiff must show "a pattern or practice of noncompliance."  12 U.S.C. § 2605(f)(1)(B).  "Pattern or practice" is not defined by a specific number of offenses; rather, the term suggests a standard or routine way of operating. *See Miranda v. Ocwen Loan Servicing, LLC*, 148 F. Supp. 3d 1349, 1355 (S.D. Fla 2015).  Plaintiff has not alleged or shown that Defendant is engaged in such a pattern.  Furthermore, failure to respond "in a proper and timely way" to one QWR is not sufficient to establish a "pattern or practice of noncompliance." *See*, *e.g.*, *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002) (failure to respond to one QWR did not amount to "pattern or practice"); *McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1365–66 (S.D. Fla. 2009) (finding defendant's deficient response to two QWRs insufficient to establish "pattern or practice").

correspondence to Defendant following the April 29, 2017 QWR.  Plaintiff does assert that he sent a request to MERS for the "milestones" on his mortgage on April 29, 2017, and dispute letters to three CRAs on May 7, 2017.  *See* ECF No. [32], at ¶¶ 23, 25.  Yet these letters were sent before (1) the statutorily required thirty days in which Defendant was required to reply to Plaintiff's April 29, 2017 QWR had elapsed, and (2) Plaintiff received Defendant's May 10, 2017 letter.  Put differently, the "milestones" request and dispute letters were sent before any RESPA violation occurred.  Thus, the "milestones" request and dispute letters—and any costs associated with them—did not arise out of Defendant's failure to comply with its statutory obligations under RESPA.

Plaintiff did send a second set of dispute letters to the CRAs on July 30, 2017, after the thirty day statutory period had expired.  *See Id.* at ¶ 52.  Nevertheless, Plaintiff does not allege that these letters were sent in response to Defendant's failure to "respond in a proper or timely way" to his April 29, 2017 QWR.  Instead, the Amended Complaint suggests that the second set of dispute letters to the CRAs were sent because none of the credit reports Plaintiff received in response to the first set of dispute letters sent on May 7, 2017, indicated that Plaintiff's mortgage account was in dispute.[2]  *See* ECF No. [32], at ¶¶ 47–52.  Plaintiff, therefore, has not "[pled] a plausible causal connection between Defendant's alleged RESPA violation and his actual damages."  *Long*, 2015 WL 4983507, at *1 (S.D. Fla. Aug. 21, 2015).

In his response, Plaintiff cites to a number of cases that have held that damages for mental anguish were proper in cases alleging RESPA violations.  *See* ECF No. [36], 4–5.  While the cases cited to stand for that proposition, it does not change the fact that Plaintiff has neither

---

[2] Indeed, Plaintiff uses these allegations as the basis for his FCRA claim, not his RESPA claim.  *See Id.* at ¶ 73 ("[Defendant] failed to indicate that the Plaintiff's account is in dispute after receiving a 'bone fide' dispute from the CRAs which triggered their responsibilities [under FCRA] as a furnisher.").

9

Case 0:17-cv-61055-BB   Document 42   Entered on FLSD Docket 12/15/2017   Page 10 of 16

Case No. 17-cv-61055-BLOOM/Valle

directly alleged nor provided facts allowing for the inference that he has suffered any emotional or mental distress as a result of Defendant's RESPA violations.[3]

Plaintiff has failed to plead that the $136.78 in costs were incurred after Defendant's allegedly inadequate response to his April 29, 2017 QWR, and the Amended Complaint does not allow for the reasonable or plausible inference that this was the case. Plaintiff has also failed to plead, let alone show, that he suffered any mental anguish damages in relation to Defendant's alleged RESPA violations. This is the second time the Court has found that Plaintiff failed to adequately plead damages. As such, Plaintiff's RESPA claim is dismissed with prejudice.

> B.    **TILA Claim (Count II).**

In Count II of the Amended Complaint, Plaintiff alleges that Defendant failed to comply with 15 U.S.C. § 1641(g) "by not indicating the location of the place where transfer of ownership of the debt is recorded." ECF No. [32], at ¶ 66. Defendant seeks to dismiss the claim, contending that Plaintiff "fails . . . to consistently allege Defendant holds the Note/Mortgage in

---

[3] The only instances where Plaintiff asserts that he suffered mental anguish are in relation to his TILA and FCRA claims. *See* ECF No. [32], at ¶¶ 66, 74. Nonetheless, Plaintiff does so in conclusory fashion and without any facts, either in his general allegations or the counts themselves, to support the contention. It is therefore unclear from the Amended Complaint what, if any, mental anguish damages Plaintiff has suffered. Even in the cases cited by Plaintiff—to the extent they are applicable—there was some evidence or allegation pertaining to mental anguish damages. *See Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1331 (S.D. Fla. 2014) (no discussion about mental anguish damages); *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1167 (M.D. Ala. 1999) (denying summary judgment because "[a]lthough the court determine[d] that recovery of mental anguish damages is allowable under . . . RESPA . . . an issue of fact exist[ed] as to whether Plaintiffs . . . suffered any mental anguish damages and, if so, how much" on the basis of one plaintiff's statements in his deposition that the receipt of certified letters would get his temper boiling and about his concerns whether defendants were going to foreclose on his house to pay the debt); *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 867–68 (N.D. Ill. 2002) (finding that plaintiff alleged actual damages in that defendant's actions affected her job and caused her mental anguish); *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809, 812 (N.D. Ill. 2001) (concluding that plaintiff's claim for mental suffering stated a claim for actual damages under RESPA when plaintiff claimed that, as a result of the bank's statutory violations, she had suffered mental anguish due to her constant worries that she would lose her home and for her time and inconvenience "insofar as she [could] establish actual pecuniary loss").

his TILA claim save for one line in paragraph 12 of the amended complaint with a vague label and formulaic recitation . . . ." ECF No. [35], at 3.

"TILA does not impose liability on servicers, but on 'creditor[s] who fail[ ] to comply with any requirement imposed under . . . section 1635 of this title [and] subsection (f) or (g) of section 1641.'" *Benjamin v. CitiMortgage, Inc.*, No. 12–62991–CIV, 2013 WL 1891284, at *2 (S.D. Fla. May 6, 2013) (quoting 15 U.S.C. § 1640(a)) (alterations in original); *see also Khan v. The Bank of New York Mellon*, No. 12–60128–CIV, 2012 WL 1003509, at *3 (S.D. Fla. Mar. 19, 2012) ("Servicers have no liability for violations of TILA *unless* they are the current or former owners of the loan.") (emphasis added); *Correa*, 2012 WL 1176701, at *9 ("Defendant BAC, as a servicer of the note, cannot be an assignee under TILA unless Plaintiff alleges facts sufficient to show that Defendant BAC must be or must have been the owner of the note . . . . Therefore, Plaintiff needs to allege facts plausibly showing that Defendant BAC is or was the owner of the obligation.") (internal citations omitted).

Plaintiff, however, has stated that Defendant is the "Holder" of the note and "Owner" of the loan on four occasions in his general allegations, *see* ECF No. [32], at ¶¶ 12, 27, 46, 56, and once in Count II itself, *see Id.* at ¶ 64. Plaintiff, moreover, has supported these allegations with the attachment of documents where Defendant refers to itself as the holder and owner of the loan. *See*, *e.g.*, ECF No. [32], at Exh. F ("[Defendant] is the Note Holder of your loan, by virtue of its purchase of your loan from Sovereign . . . and holding the original Note."). Thus, the Court finds that Plaintiff has clearly alleged that Defendant is the owner of the mortgage. Accordingly, Plaintiff has stated a cause of action under TILA.

### C.     TCPA Claim (Count III).

Defendant moves to dismiss Plaintiff's claim under the TCPA, arguing that Plaintiff has failed to show that the calls were made from an auto-dialer without Plaintiff's express consent. *See* ECF No. [35], at 4.  The Court disagrees.  The TCPA prohibits:

> [A]ny person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii).  Thus, to state a claim under the TCPA for calls made to a cellular phone, a plaintiff must allege that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party.  *See Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012).

Plaintiff has stated a prima facie case for relief under the TCPA.  Plaintiff has alleged that since May 12, 2017, he has received at least 23 phone calls to his cellular phone even though he had "revoked consent to be called in reference to the alleged debt" in the letter Plaintiff sent to Defendant on April 29, 2017.  *See* ECF No. [32], at ¶¶ 28–30.  Plaintiff also claims to have twice orally revoked any consent when speaking with Defendant's agents over the phone.  *See Id*. at ¶¶ 31, 41.  Nonetheless, Plaintiff continued to receive phone calls.  *See Id*.  Plaintiff kept records of the calls, noting certain details pertaining to each including the date, time, and whether Plaintiff answered the call.  *See Id*. at ¶ 33.  On various occasions, Plaintiff answered the phone call but "no one would say anything and there would be only dead air."  *See Id*. at ¶ 37.  As a result, Plaintiff believes that the calls were placed using an automatic telephone dialing system ("ATDS").  *Id*. at ¶¶ 36–38.

12

Defendant contends that Plaintiff's "rote recitation" that an ATDS was used has "no basis in fact." *See* ECF No. [35], at 4. However, "Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more." *Robbins v. Coca-Cola-Co.*, No. 13–CV–132–IEG (NLS), 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013).

Plaintiff has alleged that on at least six instances when he picked up the phone call, he was greeted with "dead air" and no response on the other end. At this stage of the pleadings, Plaintiff's factual allegations are sufficient to meet his "obligation to provide the grounds of his entitlement to relief, and provide sufficient notice to Defendant to answer the complaint." *Buslepp v. Improv Miami, Inc.*, No. 12–60171–CIV, 2012 WL 1560408, at *1 (S.D. Fla. May 4, 2012) (finding that Plaintiff that alleged the date and content of the text message, and that numerous other persons received the same text to their cell phones, was sufficient to state a claim for relief under TCPA); *see also Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 3d 1247, 1250 (S.D. Fla. 2014) (finding that cellular telephone user sufficiently alleged that debt collector used an automatic telephone dialing system or prerecorded voice when calling him by alleging that debt collector made 45 calls to his telephone during five-month period, called several times during one day and on back to back days, and ignored his demands that it cease calling him for payments before his payments were due).

### D. FCRA Claim (Count IV).

Lastly, Defendant seeks to dismiss Plaintiff's FCRA claim. Defendant argues that "Plaintiff has not alleged or shown that the required notice pursuant to FCRA 15 U.S.C.

1681i(a)(2) has been made to trigger the application of U.S.C. 1681s–2(b)." ECF No. [35], at 5–6. The Court finds otherwise.

FCRA imposes certain duties upon furnishers of credit information. First, in order to trigger a duty to act, a furnisher must "receive notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information" it provided to "a consumer reporting agency." 15 U.S.C. § 1681s–2(b)(1). Importantly, "notice to a furnisher of credit information is provided pursuant to section 1681i(a)(2) when a CRA, such as Experian, Trans Union or Equifax, reports that a customer, such as Plaintiff, has disputed an item of credit that [the furnisher] provided to the CRA." *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009); *see also* 15 U.S.C. § 1681i(a)(2). After receiving such notice, the furnisher is required to "conduct an investigation with respect to the disputed information," and "review all relevant information provided" to it by the CRA. 15 U.S.C. § 1681s–2(b)(1).

Regardless of the results of its investigation, the furnisher must report back to any CRA that notified it of the dispute. *See Rambarran*, 609 F. Supp. 2d at 1257 (citing 15 U.S.C. § 1681s–2(b)(1)(C)). "If the investigation results in a finding that [the furnisher] provided incomplete or inaccurate information to the CRA, then it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate information." *Id*. (citing 15 U.S.C. § 1681s–2(b)(1)(D)). Finally, if the investigation is either inconclusive or results in a finding that the furnisher provided incomplete or inaccurate information to the CRA, then the furnisher shall, "for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." 15 U.S.C. § 1681s–2(b)(1)(E). The furnisher must complete its investigations, reviews, and

reports within the thirty day period after the consumer notifies the CRA of the dispute. *See Rambarran*, 609 F. Supp. 2d at 1257 (citing 15 U.S.C. § 1681s–2(b)(2)).[4]

In the present case, Plaintiff has alleged that it sent dispute letters to CRAs in May and July of 2017. *See* ECF No. [32], at ¶¶ 25, 52. Plaintiff further alleges that "after disputing with the CRAs, the CRAs then forwarded his disputes to [Defendant] through the credit industry's 'e-Oscar' system and in response to each dispute, [Defendant] simply responded that it had 'verified' that the account belonged to it and was owed by [Plaintiff]. Nothing more was done according to a proper investigation." *Id*. at ¶ 51. In addition, none of the credit reports Plaintiff received in response to any of his dispute letters indicated that his mortgage account was disputed.[5] *See Id*. at ¶¶ 50, 55.

Defendant contends that Plaintiff's assertions are insufficient to support his allegation that Defendant received notice of Plaintiff's disputes. A review of the Amended Complaint, however, shows that Plaintiff reported his dispute to three CRAs, all of which verified the debt.

---

[4] A successful FCRA plaintiff is entitled to a damage award that varies depending on the willfulness of the breach. *See Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1258 (S.D. Fla. 2009). Recovery for a negligent violation of the FCRA is limited to the amount of actual damages and attorneys' fees and costs. *See* 15 U.S.C. § 1681o. "If the breach is willful, however, the plaintiff is entitled to recover either actual damages or statutory damages (from $100–$1,000), whichever is greater, in addition to attorneys' fees and costs." *Rambarran*, 609 F. Supp. 2d at 1258. The Court may also impose punitive damages to punish a willful violation of FCRA. *See* 15 U.S.C. § 1681n.

[5] Under 15 U.S.C. § 1681s–2(a)(3), a furnisher may not provide information to a consumer reporting agency "without notice that such information is disputed by the consumer." The duties imposed under Section 1681s–2(a), however, are not privately enforceable. *See* 15 U.S.C. § 1681s–2(c)(1); *see also Green v. RBS Nat. Bank*, 288 F. App'x 641, 642 (11th Cir. 2008) ("[Appellant] contends that [Appellee] violated § 1681s–2(a) by tendering false information regarding his account. The FCRA, however, does not provide a private right of action to redress such a violation."). Thus, Plaintiff's allegation that Defendant failed to indicate that its mortgage account is in dispute cannot form the basis of Plaintiff's FCRA claim. The Court, however, permits the allegation regarding Defendant's failure to indicate to the extent that it supports the inference that Defendant has also failed to fulfill its other statutory responsibilities to properly investigate Plaintiff's mortgage account dispute. *See O'Loughlin v. Equifax, Inc.*, 115 F. Supp. 3d 1375, 1377 (S.D. Fla. 2015) ("However, facts giving rise to a violation of § 1681s–2(a) can also contribute to a violation of § 1681s–2(b), for which a private cause of action does exist. Accordingly, that some of [defendant's] complained-of conduct might violate § 1681s–2(a) does not foreclose [plaintiff's] claim upon that same conduct under § 1681s–2(b).").

*See* ECF No. [32], at Exhs. H–N.  As previously noted, the CRAs have a legal obligation under 15 U.S.C. § 1681i(a)(2)(A) to "provide notification of the dispute to any person who provided any item of information in dispute."  Viewing the Amended Complaint in the light most favorable to Plaintiff, these allegations and Plaintiff's exhibits sufficiently infer an allegation that the CRAs obeyed the law and provided notice to Defendant of Plaintiff's dispute, hence triggering the notice required under Section 1681s–2(b).  At this stage of the litigation, the Amended Complaint states a plausible claim for relief under FCRA.

**IV.    CONCLUSION**

For all of the reasons stated, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice, **ECF No. [35]**, is **GRANTED in part and DENIED in part**.
2. Count I is **DISMISSED with prejudice**.
3. Defendant is directed to file its Answer to the Amended Complaint on or before **December 27, 2017**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of December, 2017.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record